May it please the Court. My name is Bruce Bryan. I'm assigned to represent Mr. Leacy. I intend to first argue the issue in his case dealing with conflict of interest, and to the extent that I do not reach arguments in this case on oral argument here, we rely on, and I rely on, the main briefs, and Mr. Leacy relies on his pro se briefs. Dealing with this claim of Mr. Leacy that his first attorney rendered him ineffective assistance because he had a conflict of interest, I'd like to address the contention, his contention, that there was a per se conflict of interest. His first attorney, Mr. Zellin, it's Mr. Leacy's claim that he was either implicated by the government's letter dealing with the post-arrest misconduct, in that misconduct, or that he feared that he would be implicated. And the basis of the contention is our record documents here. It is the government's letter, which is filed, and also primarily certain state court transcripts filed with the court. From the comparison of those two documents, certain negative inferences allegedly can be made. One is that in the government's letter it states as one act of misconduct that there was, there were misrepresentations made to the state court judge regarding an attempt to delay a foreclosure sale. Well, Mr. Zellin did appear in those foreclosure sales, as is evident from the transcripts, argued vigorously for a stay of the foreclosure, and based on his arguments as stated by the state court judge, granted that stay. Another negative inference that may be drawn deals with, in the government's letter, it states that misrepresentations were made to the state court judge regarding the ownership of a property that was subject of the fraud and the criminal prosecution in Cold Spring Harbor. In the, if you look at the state court transcripts, Mr. Zellin, acting on Mr. Lisi's behalf, made representations that Mr. Lisi had transferred his ownership to an individual named Katsouris. The government, in its letter, stated that that transfer, the alleged transfer, was a sham. Another negative inference from the government's letter in the comparison is that we have a widow who was defrauded out of her inheritance, and that the money was used improperly to pay attorneys in this civil litigation. In that, in the letter, it certainly, it suggests that some of the monies that were paid were paid improperly, in that amounts were paid for services that appear not to have been rendered. Kagan. Other than in Mr. Talger's letter, did, were these facts all presented in the way that you're presenting them to the district court judge? Well, it's true. I think what you're going to, Judge Mohler, is the question. I'm just asking a question. Yeah. I believe so. Well, you're saying other than his letter. I think there's the only way is through his letter, frankly. I mean, the motion to vacate was through his unsworn letter. It was extensive. I mean, you were marshaling a lot of facts, but what you're telling me now is that what was before the district court was a recitation of facts as they appeared in Mr. Talger's letter. Okay. The motion here to vacate was through more than one, I think, letter, Mr. Talger's letter. And then attached to that letter were these documents, in particular the state court transcript. He did make arguments in his letter that the state court, and this is the best of my recollection as I stand here, and he wouldn't have attached those state court transcripts unless he thought that they indicated that, and he was drawing a comparison between the government letter that was dated December 11, 2012, and, among other things, the state court transcripts. So I am making arguments now. The government and the district court judge here said that because his letter was unsworn, that is not something that can be relied upon. And so what I am doing here is making arguments based on what I would contend are documents that are. Was Mr. Talger made aware within a sufficient amount of time that that was a concern of the district court, that is that he had submitted an unsworn letter? Yes. And so what was his response to that expression of concern? Again, I'm going by my recollection here of what was done. And my recollection is that Mr. Talger submitted an unsworn letter, lengthy. I believe, as my recollection is, that the government said this is unsworn, and my recollection is that Mr. Talger replied with, again, a letter, and my best recollection saying that it was not necessary to have a sworn document. That's my best recollection of the record. Didn't the government concede that $150,000 was paid to Leecey's criminal counsel? And was that Mr. Zellum? Again, no, I, of course, I am Mr. Leecey's fifth attorney. And so I am solely going on this record here. And the best I can say is that a negative inference can be drawn from the government's letter, because I do not believe anywhere else, I don't recall there being any other criminal counsel other than Mr. Zellum. But, again, I'm solely looking at this record. The other, another item is that if these elements do not rise to the level of a per se conflict, then the contention is that there is an actual conflict. And the actual conflict, actually, I think that this, what I'm about to say, pertains to the analysis of whether this is per se and actual, and that is whether the government's letter caused a fear in Mr. Zellum as to whether he might be accused rightly or wrongly in that post-traumatic stress disorder. And I would say to his response to the district court as to what was going on, I think, indicates, and I think rightly so, I think any attorney would probably be concerned. You see something like this, you see a letter that's saying there's misrepresentations, there's an attempt to delay a foreclosure proceeding, and it's a misrepresentation of ownership. And you would see yourself as, wait a minute, I'm there. And also his remark that it's obvious that attorneys are involved here and that they should come forward or they should be named. Obviously he thought there was a concern about attorneys having some accusation made against them. And in that sense, then, that would either create another per se conflict. If he was concerned about the possibility of being implicated, why would he be encouraging a meeting of his client with the government to cooperate? Well, it's very difficult to put yourself in the mind of someone who is facing a concern like that and what perhaps may be the best way to resolve that concern. But the thing is, I would say, is with actual or per se conflict, prejudice is automatic. Actual conflict, prejudice is presumed. It may be rebutted. I submit it's not rebutted here. And so I think that might start to go into the area of whether there is a showing of prejudice or not. And I submit that what's been articulated here is a basis to say it's either a per se conflict or an actual conflict. The last thing I would just like to remark, I see that my time is up, is simply that at a minimum the contention is that an evidentiary hearing or a cursio hearing should have been held here. And the standard is low for granting when you deny an evidentiary hearing. That is, if it's inconsistent with the record, if it's inherently incredible, or if it's conclusory. I submit that if this comparison of record documents that I've gone through, well, it's plausible here. It's based on specific facts, so it's not conclusory. And, in fact, it's not contradicting the record, the reliances on record documents. Thank you. Thank you. Ms. Scottko. May it please the Court, my name is Anna Scottko. I represent the United States in this appeal. Judge Buchwald did not abuse her discretion in finding that Leecey had failed to provide a fair and just reason to withdraw his plea under the framework set forth by this Court in Doe. Leecey's motion was filed one year after his guilty plea and more than three months after retaining new counsel. And Leecey's motion did not assert that he was innocent of the crimes to which he had pled guilty. Leecey's claims of conflict of interest and ineffective assistance of counsel also failed to meet the stringent standards set forth by this Court. As they were based on vague and conclusory allegations, they were contradicted by the record before the district court and his unequivocal assertions under oath at his guilty plea. Well, if Mr. Tauger's letter had been a sworn declaration of some sort, then why wouldn't that at least have triggered the requirement to have an evidentiary hearing? So, first of all, Your Honor, the request for an evidentiary hearing was first raised in a footnote in Mr. Leecey's reply brief to the government's response to Mr. Tauger's letter. They did not file a sworn affidavit and, in fact, tried to prohibit or preclude Mr. Zellin from filing a response to the allegations asserted against him. So the fact that he's now requesting an evidentiary hearing, which would have required testimony from both sides and a presentation, a fulsome presentation of this evidence, belies the attempt to then suppress the letter that Mr. Zellin sent to the district court. The government submits that an evidentiary hearing was not required here, that the government had set forth to the district court that Mr. Zellin was not implicated in any criminal conduct, that there was no evidence that he knowingly participated in the criminal scheme for which Mr. Leecey was indicted. But did he know that, excuse me, at the time of the guilty plea? That is to say it's fine to say after the fact that, oh, there was no conflict because Mr. Zellin was not involved and we had no evidence, et cetera. But I think what Mr. Bryan is focused on is the idea that the government wrote a letter back at the time to the court saying this kind of misconduct occurred and the transcripts of the State proceedings, based on the transcript of the State proceedings, a reasonable lawyer would be concerned that the government was actually suggesting that he may have been involved. Could you address that argument? Yes, Your Honor. So just in terms of the timing, the letter to the district court first raising the post-arrest fraudulent conduct relating to Mr. Leecey was filed in December of 2012. Mr. Leecey pled guilty many months later in April of 2013, after there had been extensive and documented conversations between Mr. Zellin and the government related to the post-arrest conduct, and whether the plea would encompass all of that conduct or just part of it, whether Mr. Leecey would be brought in to pursue cooperation or not. So there were extensions. Well, and is there any indication in those documented negotiations that we could find in the record that would indicate that the government assured Mr. Zellin that he was not under any suspicion? I don't know the answer to that. I was not the prosecutor in the proceedings below. If you would like me to find an answer to that, I can write to the person who's not in the record. Well, the question is what's in the record. I don't — I wasn't asking for your personal recollections. I wonder if there was anything in the record. I don't know anything in the record on appeal, Your Honor. Okay. Well, so, I mean, and as far as the unsworn nature of the Tauger letter, Mr. Bryan, in his argument at any rate, here today, relied only on the letter from the government and a comparison of that letter with the transcripts. So it's not clear to me what needed to be sworn to by Mr. Tauger if he presented the letter and the transcripts. Are you saying it's deficient because there was no affidavit swearing that these are the — authenticating the transcripts and the letter? There was also no affidavit from Mr. Lisi indicating that he knew or that there was evidence that Mr. Zellin was aware that he was involved in the criminal scheme that did involve Lisi. There's also — Would that be likely, that he would provide an affidavit prior to his change of plea incriminating himself in the post-arrest conduct? So why would Mr. Lisi provide an affidavit that says, yes, I did this and Mr. Zellin helped me? He could provide information indicating that he had firsthand knowledge that Mr. Zellin knew that he was involved in criminal activity. You're saying he could have provided that at the time of the motion to withdraw the plea, not back when the negotiations were going on? Yes, Your Honor. The record also indicates that Lisi's own sworn statements at his plea proceeding, that his plea was knowing and voluntary, that it was not coerced or based on any strong arming by defense counsel. In fact, he said he was happy with his attorney's representation at that point. It was also supported by an adequate factual basis. I would also like to point out to this Court that nothing changed between Mr. Talger's letter in early February of 2014 indicating that Mr. Lisi did not intend to withdraw his plea, and the motion to withdraw at the end of March 2014 indicating that he did intend to withdraw his plea, except that Judge Buchwald denied another request for an adjournment. That was the only new occurrence. There was not any more information about Mr. Zellin's involvement, and defense counsel has presented none. There was no new information from the government. There were no further developments. Lisi's motivation for seeking to withdraw his guilty plea was that he believed that consecutive charges arising out of his additional post-arrest frauds would disadvantage him at sentencing. As the District Court correctly found, that is not a Judge Buchwald also properly rejected Lisi's claim that the government had violated the plea agreement. First, at the plea proceedings, the AUSA made clear that his commitment to meet with defense counsel prior to filing additional charges did not modify the plea agreement and that the post-arrest conduct was not part of the plea agreement. Second, as the District Court also found, the commitment described at the plea was on multiple occasions. Accordingly, the appellate waiver contained in the plea agreement should be given effect, and Lisi's challenges to his sentence should be dismissed. If this Court has no further questions, the government will rest on its brief. Thank you. Thank you, Your Honors. Mr. Bryan. Thank you. Judge Lynch, you raised talking about the transcripts. And, yes, the letter was unsworn. But in terms of the best I can say with the transcripts is that they are public documents. Yes. I mean, I didn't hear the government suggest that it was contending that there was some critical defect because no one swore that these are the transcripts. I didn't hear any contest that these are the transcripts and this was the letter. So, I mean, I take it what your position is is that the unsworn quality of the Tauger letter is a red herring because you're basing at least the argument you made here exclusively on documents the authenticity of which is uncontested. Correct, Your Honor. And one additional thing, the last page of the transcripts contains certifications of court reporters, state court reporters. Now, they are not signed, but it has the language. But no one's disputing their authenticity. I think I should address the argument of counsel about the delay in making the motion. Yes, it took him several months after retaining new counsel, but he did make it. I would add, though, that the motion was made before sentencing. In the case law, there tends to be a critical distinction between whether a motion to vacate a plea is made before sentencing or after. So that is a factor in Mr. Lisi's favor. I think also another thing about the no claim of innocence contention here is that one thing I would say about it is that we're dealing with a very fundamental right if Mr. Lisi is true about the conflict of interest. And that goes to the core of representation in the case. The second is that a defendant need not claim innocence but can say, I want to go to trial to put the government to its burden of proof. Has he ever actually said that under oath anywhere? In my recollection of the record, it may be there, but I don't recall right now. I certainly, Mr. Lisi. I assume it's not there. And then what? Well, again, I would say that it is only a factor and that here what we're dealing with is a fundamental constitutional right at its core. And that is if an attorney has a conflict, and this is why, for example, a Curcio hearing is so important. It's so critical that a defendant is being rendered on conflicted advice. And it was at a juncture in his case where a critical decision was made. And just to be clear, your argument is based on the possibility that someone in Mr. Zelen's position would be concerned that the government thought he was involved, not on any evidence that he actually was involved in any way. Exactly, Your Honor. And I think that his response to the letter at the government hearing, once he's presented with the letter and the district court judge is asking his position, reflects that concern. And to this day there is no evidence of any sort that he was actually involved in any misconduct?  Well, I mean, Mr. Tauger at one point, well, Mr. Lisi in one of his pro se submissions, argues that Mr. Tauger was ineffective for not presenting unspecified evidence that Mr. Zelen was involved in criminal wrongdoing. Yet there is no specification, there's no affidavit for Mr. Lisi, there's nothing whatever to support the idea that Mr. Tauger was aware of such evidence and neglected to put it into the record. At most at this point there are only the negative inferences that can be drawn from the record. Beyond that, there is not. When, on this record, when did Mr. Zelen stop pursuing possible cooperation? Is there a way that we can ferret that out? I'm not sure, Your Honor. I'm not recalling it being said one way or another in the record. That's my recollection as I stand here. The only recollection I have in the record are statements by the government in response, saying he wouldn't have pursued cooperation if he had that concern. I don't specifically recall as I stand here now if there is a statement as to when that pursuit or lack of pursuit of cooperation occurred. All right. Thank you very much. Thank you.